Filed 3/19/13  R.D. v. Superior Court CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| R.D.,<br><br>  Petitioner,<br><br>  v.<br><br>THE SUPERIOR COURT OF LOS ANGELES COUNTY,<br><br>  Respondent;<br><br>LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>  Real Party in Interest. | No. B246194<br><br>(L.A. Super. Ct. No. CK86945) |

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Elizabeth Kim, Juvenile Court Referee.  Writ denied.

Law Offices of Alex Iglesias, Steven Shenfeld and Jaclyn Smith for Petitioner.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Jessica S. Mitchell, Associate County Counsel, for Real Party in Interest.

No appearance for Respondent.

_____

R.D. (mother) petitions for extraordinary writ review[1] of the orders made on November 27, 2012, at a hearing under Welfare and Institutions Code section 366.22[2] ("referral hearing") terminating reunification services and setting a permanent plan hearing (§ 366.26) for her son, E.R. ("son").  She contends substantial evidence does not support the finding that return of the child to her would be detrimental.  We deny the petition.

## FACTS AND PROCEDURAL HISTORY

Son, born in 2009, was born to mother and C.R. (father).[3]  The parents had a long history of illegal drug use, drug-related criminal convictions, and domestic violence.  Mother began using crystal methamphetamine in 1998 when she was 15 years old, failed to stop using the drug, and smoked it during the pregnancy.  She frequently used drugs in son's presence.  She had a bad temper and was physically aggressive with both father and son.  Son was terrified of her at times.  On occasions, including in December 2010, mother was seriously depressed and cut herself.  As parents were homeless, son was cared for by paternal relatives from December 2010 to March 2011.

In February 2011, father physically abused son.  The Department of Children and Family Services (Department) provided the family voluntary services.  However, following mother's arrest on March 5, 2011, for being under the influence (Health & Saf. Code, § 11550), the Department detained son from parental custody on March 7 and filed a dependency petition.  Son was placed in the Y. foster home, where he remained throughout the proceedings.  He thrived and blossomed in the care of his foster family.

---

[1]     The writ petition was filed pursuant to California Rules of Court, rule 8.452.

[2]     All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[3]     The dependency court found father to be son's presumed father.

2

On March 9, 2011, mother enrolled in a residential drug treatment program that was not Department-approved. On March 30, 2011, she enrolled in Asian-American Drug Abuse Program (AADAP), a 12- to 18-month residential program.

On May 25, 2011, son was declared a dependent of the court based on sustained allegations under section 300, subdivision (b) as to mother, that son was at substantial risk of suffering serious physical harm or illness as a result of mother's failure to adequately supervise or protect him and inability to provide regular care due to substance abuse. Custody was taken from the parents and given to the Department for suitable placement. Reunification services were ordered. Mother was ordered to participate in individual counseling, drug rehabilitation, Narcotics Anonymous aftercare, and parenting. She was granted monitored visits.

On July 27, 2011, the dependency court granted mother unmonitored visits. On September 15, 2011, the court granted mother unmonitored visits for a minimum of eight hours per week.

Mother continued to seek love and support from father, who was not in compliance with the dependency court's orders. In the fall of 2011, mother had a set-back in her treatment at AADAP, which required her to restart phase two of the program.

On January 11, 2012, mother left the drug treatment program at AADAP after she had a verbal altercation with a new roommate. Two days later, she enrolled in a new inpatient program at His Her Sheltering Arms. There, she was placed on behavioral contracts numerous times for dishonesty and manipulating staff. She refused to work on her treatment program or her behavior. After an accumulation of violations of behavioral contracts, she was discharged from this program on April 2, 2012, and given referrals to other programs.

On April 2, 2012, she enrolled in House of Uhuru, a nine-month inpatient treatment program, where she participated in numerous group sessions and 12-step meetings each day but was back at stage one of treatment. Mother completed a parenting program in June 2012. She had one eight-hour unmonitored visit per week.

On August 6, 2012, the dependency court granted mother overnight visits with son in her treatment program so that the Department could consider whether or not to recommend a home-of-parent mother order at the 18-month review hearing under section 366.22 in November 2012.

On August 9, 2012, a referral was called in to the Department stating son disclosed that "'Joe eats his mommy's breast' and she is naked." Son told the social worker on August 10, 2012, "'Joe eats mommy,'" pointing to his genital area. Son did not know who Joe was. House of Uhuru is coeducational. It was possible for mother and son to be alone in mother's room with someone else, and mother's counselor on the floor would not know about it. The Department began an investigation of the referral.

Mother's weekend visits began on August 10, 2012. Because of the referral, the social worker directed mother to insure son was under her supervision at all times and no other adults had access to son. The overnight visits took place on four consecutive weekends, until September 2, 2012. On August 25, 2012, son displayed redness on the left stomach side. Further, son jumped between the bed, fell, and hit his head, leaving a red mark above his eyebrow. The Department recommended mother take another parenting class and address in individual counseling the issue of companion relationship and appropriate adult behavior when around son.

On September 5, 2012, the dependency court ordered mother's visits to be monitored.

The Department reached the following conclusions concerning the referral. To the extent son's disclosure constituted an allegation of sexual abuse of son, the allegation was "unfounded." To the extent the disclosure constituted an allegation of general neglect of son by mother, the investigation was "inconclusive," because son was too young to provide a more detailed narrative account. However, the report that mother acted inappropriately with a male in son's presence was sufficient to warrant requiring mother to address the issue of appropriate behavior with men around children. On September 19, 2012, the dependency court continued the order for monitored visits.

Mother was expected to complete her program and be discharged from House of Uhuru on January 2, 2013. House of Uhuru would allow son to reside with her there and subsequently in transitional housing. As of late November 2012, mother was working on "Who's an Addict?" This is the first chapter of the work study guidebook she used in her program relating to the 12 steps of recovery. Mother did not currently have a sponsor. She had monitored visits with son for three hours per week at the foster care agency.

On November 27, 2012, after mother had been provided with nearly 21 months of reunification services, the section 366.22 18-month review hearing was held. Reunification services were terminated,[4] and the matter was set for a permanent plan hearing under section 366.26 on March 26, 2013. The dependency court found return of son to mother's custody would create a substantial risk of detriment to the child. The court stated: "[Son] stated that his mother is naked; that someone is eating his mother. He's pointing to his genitals. And he's also saying that someone is eating his mother's breast. [¶] . . . [¶] . . . I am concerned in light of the facts of this case and the history that mother has demonstrated throughout the course of the past 18 months and the reported incidents that . . . are contained in the past court reports. [¶] . . . [T]he specific statements that are being made here [by son] cause me concern." "I think the timing is crucial. We're at a [section 366.22] hearing now. [¶] . . . [A]t this point, the issue is can the child safely be returned today? If not, the court must terminate reunification services and must set a selection and implementation hearing, period. We're not talking about further [family reunification] services at this point. We're talking about whether the child can safely be returned. [¶] We have a situation today where the mother has an extensive drug history, this includes criminal convictions. She has never successfully completed a program. She has been in and out of different residential programs; but, for whatever reason, she is not completing them. [¶] Additionally, in terms of the progress that she has made, I see that she is in compliance with the program rules over at the House of Uhuru in that she has not been terminated from the program, but she is on step one of her

---

[4] Father's reunification services had been terminated on December 14, 2011.

12 steps. She does not have a sponsor. And, although the program does have space for the child, the issue is whether the child can safely be returned to the mother. [¶] I am very concerned about the statements that [son] has made that have been reported regarding the mother . . . engaging in sexual activity in the child's presence. But we are not at a jurisdiction hearing where the court needs to make a finding today whether that, in fact, has happened or not. [¶] I'm looking at the totality of the circumstances; and, in light of the fact that the mother has not completed her program, she has not made substantial progress to a point where the child can safely be returned to her, we have simply run out of time, period."

## DISCUSSION

Mother contends substantial evidence does not support the finding at the section 366.22 hearing that return of the child would create a substantial risk of harm. We disagree with the contention.

### A. Substantial Evidence

We review the dependency court's findings that return of the children to mother would create a substantial risk of detriment for substantial evidence. (*Angela S. v. Superior Court* (1995) 36 Cal.App.4th 758, 763.) "'In juvenile cases, as in other areas of the law, the power of an appellate court asked to assess the sufficiency of the evidence begins and ends with a determination as to whether or not there is any substantial evidence, whether or not contradicted, which will support the conclusion of the trier of fact. All conflicts must be resolved in favor of the respondent and all legitimate inferences indulged in to uphold the verdict, if possible.' [Citation.]" (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 820.)

**B. Section 366.22**

Section 366.22 provides in pertinent part: "(a) . . . the permanency review hearing shall occur within 18 months after the date the child was originally removed from the physical custody of his or her parent or legal guardian. . . . [T]he court shall order the return of the child to the physical custody of his or her parent or legal guardian unless the court finds, by a preponderance of the evidence, that the return of the child to his or her parent or legal guardian would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child. . . . The failure of the parent or legal guardian to participate regularly and make substantive progress in court-ordered treatment programs shall be prima facie evidence that return would be detrimental. . . . [¶] . . . [¶] . . . [If] the child is not returned to a parent or legal guardian at the permanency review hearing, the court shall order that a hearing be held pursuant to Section 366.26 . . . ."

"[T]he Legislature has determined a child's need for stability and security within a definitive time frame becomes paramount [once the reunification period has expired]. The cutoff date for fostering family reunification is the 18-month status review. At this hearing, the court must return children to their parents and thereby achieve the goal of family preservation or terminate services and proceed to devising a permanent plan for the children. (Welf. & Inst. Code, § 366.22.)" (*In re Elizabeth R.* (1995) 35 Cal.App.4th 1774, 1788.) "[C]ompletion of the technical requirements of the reunification plan . . . is [not] sufficient. . . . [U]nder [the statute,] the court must also consider progress the parent has made towards eliminating the conditions leading to the [child's] placement out of home." (*In re Dustin R.* (1997) 54 Cal.App.4th 1131, 1141-1142.)

**C. Return to Mother Would Be Detrimental**

Mother did not complete the requirements of the reunification plan. There was evidence mother had been in her disease of drug addiction for 14 years and never

completed a treatment program she had started.  She had not substantially begun to work on the twelve steps of recovery from drug addiction and did not have a sponsor.  She had never had custody of son and been drug free.  (See *Constance K. v. Superior Court* (1998) 61 Cal.App.4th 689, 708 [evidence parent never had full-time custody when drug free is evidence of risk of harm from return of child to parent].)  Son's disclosure to more than one person on more than one occasion that mother engaged in various sexual activities in his presence is evidence she was not able to act appropriately in the parental role when son was in her custody even for a brief period of time.  (See *ibid.* [inability to act appropriately as a parent is evidence of risk of harm].)  This is ample substantial evidence supporting the court's conclusion that return of son to mother would be detrimental to the child.

## DISPOSITION

The petition is denied.

KRIEGLER, J.

I concur:

TURNER, P. J.

8

ARMSTRONG, J.

I respectfully dissent.

At the section 366.22 hearing, DCFS was "required to establish . . . that releasing [E.R.] to [Mother's] custody would 'create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child.' (Welf. & Inst. Code, § 366.22, subd. (a).) That standard, while vaguely worded to be sure, must be construed as a fairly high one. It cannot mean merely that the parent in question is less than ideal, did not benefit from the reunification services as much as we might have hoped, or seems less capable than an available foster parent or other family member." (*David B. v. Superior Court* (2004) 123 Cal.App.4th 768, 789.)

Here, DCFS presented evidence that despite 21 months of reunification services, Mother had not completed a drug program. That is a serious matter, but must be considered along with the evidence that by November of 2012, the time of the section 366.22 hearing, Mother had been in a program, and been in compliance at that program, for seven months, and was due to complete the program in another month. Moreover, she had not missed a drug test, or had a positive test, since March of 2011. I cannot see in the evidence that Mother was a month short of completing her program any proof that E.R. was at risk in her care.

There is also the issue of sexual misconduct. The juvenile court believed that it could find detriment to E.R. based on an allegation of sexual misconduct, without determining whether, in fact, misconduct occurred, citing "the totality of the circumstances." But, if there was no misconduct, misconduct is not part of the "circumstances" and cannot establish risk. I note in this regard that DCFS itself determined that the allegation was "unfounded and inconclusive." An allegation cannot be unfounded, inconclusive, and, at the same time, evidence of substantial risk of detriment.

ARMSTRONG, J.